**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAUL DIAZ** | : | |
|     **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-2351** |
| | : | |
| **ANTHONY LETIZIO,** | : | |
|     **Defendant.** | : | |

**<u>MEMORANDUM</u>**

**SCHMEHL, J. -** */s/ JLS*                                               **MAY 15, 2026**

Raul Diaz asserts Eighth Amendment claims under 42 U.S.C. § 1983 against Dr.

Anthony Letizio, based on medical treatment he received for his vision while housed at SCI

Phoenix from 2022 through 2025.  Diaz alleges that he suffers from blindness and permanent

vision loss after Letizio denied or delayed recommended specialized care.  Letizio has moved to

dismiss Diaz's claims.  For the reasons that follow, the Motion will be denied.

**I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

Diaz's eye conditions began in 2018 while he was housed at SCI Graterford, where he

had a cataract procedure done on both eyes.  (Compl. at 4.)  Diaz is diabetic and states that

delays in eye care for people with diabetes have "consequences."  (*Id*.)  After Diaz was

transferred to SCI Phoenix, he experienced delays in receiving medical care for his eye

conditions, which caused him to suffer from blindness in his left eye and loss of vision in his

right eye.  (*Id*.)  Diaz states that Letizio is the "medical director" who is responsible for all of the

---

[1] The factual allegations are taken from the Complaint (ECF No. 1) and any exhibits attached to the Complaint and to the parties' briefing that are incorporated into the Complaint by reference, such as grievance documents.  *Rinaldi v. United States*, 904 F.3d 257, 261 n.1 (3d Cir. 2018).  The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

patients' medical care at SCI Phoenix. (*Id*.)  Letizio is allegedly solely responsible for deciding when inmates can obtain specialized medical care outside of the prison. (*Id*.)

Diaz had "eye doctor consults from 2022 through 2024" with at least three outside medical providers. (*Id*.)  During this time, he also submitted many sick call requests and inmate requests seeking care for his eyes. (*Id*.)  Health Care Administrator Brittany Huner and Nurse Supervisor Monique Savage responded to these requests, either noting that they would look into his concerns, or stating that appointments were scheduled. (*See* ECF 22 at 7, 8-10.)  In one inmate request in early 2023, Diaz raised concerns that he was going blind and that treatment (eye injections) was not working. (*Id*. at 9.)  Diaz claims that when he submitted an inmate request, his concerns about his vision loss went unaddressed and the providers he saw could not "approve specialized treatment." (Compl. at 5.)  He states that his complaints were forwarded to Dr. Letizio "for scheduling," but Letizio would not respond. (*Id*. at 5, 8.)  Letizio allegedly had "no burden of care" but instead ignored Diaz's needs for specialized care for "medical profit reasons." (*Id*. at 8.)  From 2022 through 2024, Diaz made "sick call" requests "numerous times." (*Id*. at 5.)  The providers he saw claimed that they would talk to Letizio. (*Id*.)  Despite these appointments, Diaz experienced worsening eye conditions. (*Id*. at 4-5, 8.)  Diaz alleges that his "diminish[ing]" vision affected his ability to read, including the Bible, and his ability to write and "mark circles" on the "commissary's bubble sheet." (*Id*. at 5.)

Diaz had a consultation with the Lehigh Valley Canter for Sight in October of 2024. (*Id*.)  Letizio "finally approve[d]" Diaz's laser surgery in March of 2025. (*Id*.)  The surgery "has not made any difference for [Diaz's] vision." (*Id*.)  Diaz had been told since 2022 "to complete both cataract surger[ies] since [his] first operation." (*Id*. at 13.)  However, from 2022 through 2024, the surgeries had been denied, and he only received eye drops. (*Id*.)  Diaz states that it was

Letizio's decision to delay the surgery for two years, which caused "extensive pain and injury or permanent damage." (*Id*.) Based on these allegations, Diaz asserts Eighth Amendment claims for deliberate indifference against Letizio and seeks money damages.

The Court granted Diaz leave to proceed *in forma pauperis*, screened his Complaint under 28 U.S.C. § 1915(e)(2)(B), and directed that it be served for a responsive pleading. (ECF Nos. 7, 8, 15.) Letizio filed the pending Motion to Dismiss (ECF No. 17), to which Diaz filed a response in opposition (ECF No. 22).

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. "A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp*., 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendants' burden to show that a complaint fails to state a claim. *See Hedges v. United States*,

404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro se* litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

## III.   DISCUSSION

Diaz asserts Eighth Amendment claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

Diaz alleges that Letizio was deliberately indifferent to his eye care needs. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege

4

facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Mere negligence is not sufficient." *Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (*per curiam*) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Letizio does not challenge Diaz's medical conditions as serious. Rather, he argues that the Complaint fails to state a plausible Eighth Amendment claim against him because Diaz has not alleged that Letizio was personally involved in Diaz's medical care. As noted above, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode*, 845 F.2d at 1207; *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his

or her own misconduct." (quoting *Iqbal*, 556 U.S. at 677)).  Letizio contends that, because he never specifically treated Diaz from 2022 through 2024, he could not have been personally involved in his care.  (ECF No. 17 at 9, 12-13.)  However, Diaz's claim against Letizio is based on his role as the "medical director" and not as a treating physician.  Diaz claims that Letizio was responsible for the medical care of all SCI Phoenix patients and, in this role, made all decisions about when inmates were permitted to see specialized care outside of the prison.  Diaz alleges that Letizio was aware of his worsening eye conditions and his need for cataract surgery but refused this "specialized" care for financial reasons.  Based on this, Diaz has sufficiently alleged Letizio's personal involvement in his care.  *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (noting that a supervisory defendant may be personally liable under § 1983 if he or she (1) "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm" or (2) "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct" (citations and quotation marks omitted), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015); *see also Smith v. Wellpath, LLC*, No. 24-1422, 2026 WL 897362, at *6 n.7 (E.D. Pa. Mar. 30, 2026) (concluding that the plaintiff sufficiently alleged personal involvement of medical supervisory defendant who did not treat the plaintiff but instead "repeatedly denied or delayed treatment for his skin conditions for non-medical reasons").

Letizio also argues that Diaz failed to state a plausible Eighth Amendment claim because the Complaint contained "[n]o . . . factual averments . . . showing deliberate indifference."  (ECF No. 17 at 8.)  Specifically, Letizio highlights that Diaz fails to allege that he "wanted to hurt or harm Diaz" or that there was otherwise a "subjective awareness of harm."  (*Id*. at 9.)  Letizio's

argument overstates the pleading requirements for deliberate indifference.  Allegations of overt desire to harm is not required.  Rather, "if necessary medical treatment is delayed for non-medical reasons, a case of deliberate indifference has been made out."  *Lanzaro*, 834 F.2d at 346 (cleaned up).  Here, Diaz alleges that Letizio was made aware of Diaz's complaints about worsening vision and need for cataract surgery when medical providers who treated Diaz notified Letizio about the care and about Diaz's complaints.  Further, Letizio, who possessed the sole authority to approve the surgery, nevertheless delayed approval for over two years for financial (i.e., "profit") reasons.  (Compl. at 4-5, 8.)  The delay caused Diaz to experience worsening conditions, blindness in one eye and loss of vision in the other.  Liberally construing the allegations in the Complaint and resolving all inferences in Diaz's favor, the Court concludes that Diaz has plausibly alleged that Letizio was deliberately indifferent to his serious medical needs.  *See Lanzaro*, 834 F.2d at 346; *Smith*, 2026 WL 897362, at *6; *Gioffre v. County of Bucks*, No. 08-4232, 2009 WL 3617742, at *6 (E.D. Pa. Nov. 2, 2009) (finding that plaintiff adequately pled deliberate indifference against non-medical personnel who ratified policy or practice whereby drug users were denied necessary medications for "impermissible financial reasons"); *see also Moriarty v. De LaSalle*, No. 12-3013, 2014 WL 7011169, at *2 (D.N.J. Dec. 11, 2014) (stating that "when a prescribed medical treatment is denied, reduced or changed *for non-medical reasons*, including financial, administrative or logistical, the so-denied/reduced/changed treatment suggests an act of deliberate indifference").

Letizio also argues that any deliberate indifference claim must be dismissed because Diaz was receiving medical care and, thus, cannot base his claim on allegations that the care was inadequate.  (ECF No. 17 at 9.)  While Letizio is correct that in certain circumstances, courts should hesitate to "second guess medical judgments" of prison medical staff, there are other

circumstances when care does not meet Eighth Amendment standards, such as when prison officials "opt for an easier and less efficacious treatment of the inmate's condition." *Palakovic v. Wetzel*, 854 F.3d 209, 227-228 (3d Cir. 2017) (internal quotation marks omitted).  Diaz concedes that he received medical care for his eye conditions—both within the prison and through outside consultations.  However, he also alleges that he continually complained about that care not working (e.g., eye drops) and, more importantly, that surgery had been recommended since 2022, but delayed until 2025 for "profit reasons," which caused him "extensive pain and injury or permanent damage."  (Compl. at 8, 13.)  Accordingly, the Court concludes that Diaz has stated a plausible Eighth Amendment deliberate indifference claim against Letizio.

## IV.    CONCLUSION

For the foregoing reasons, the Court will deny Letizio's Motion to Dismiss. An appropriate order will be filed separately.

BY THE COURT:

*/s/ Jeffrey L. Schmehl*

**JEFFREY L. SCHMEHL, J.**